UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

DEBORAH TRAPP-MILEY,

                Plaintiff,

      -against-

THE CITY OF NEW YORK, et al.,

                Defendants.

----------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

**09-CV-3933 (KAM)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Deborah Trapp-Miley ("plaintiff") brought the instant action, alleging

violations of her civil rights pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, as well as

pendent state law claims, arising out of her arrest on September 20, 2006 for disorderly

conduct and obstruction of governmental administration. See Complaint (Sept. 11, 2009)

("Compl."), Electronic Case Filing Document Entry ("D.E.") #1. Pursuant to Rule 56 of the

Federal Rules of Civil Procedure, defendants -- the City of New York (the "City") and Police

Officer Louis G. Morselli ("Morselli") and Sergeant John Passamenti ("Passamenti")

(collectively, "defendants") -- moved for summary judgment. See Notice of Motion, D.E.

#42. On October 11, 2011, the Honorable Kiyo A. Matsumoto referred defendants' motion to

the undersigned magistrate for a report and recommendation. See Order (Oct. 11, 2011).

For the reasons set forth below, the Court recommends that summary judgment in

defendants' favor be granted in part and denied in part.

## BACKGROUND

The following factual background is drawn from the parties' respective Rule 56.1 statements and exhibits. Factual disputes are noted below.

## I.     The Arrest

On September 20, 2006, plaintiff learned that her son, Merchant Trapp ("Trapp"), had been arrested and brought to the 83rd precinct police station in Brooklyn. See Plaintiff's Rule 56.1 Statement of Material Facts ("Pl. Rule 56.1") ¶ 1, D.E. #47; Defendants' Rule 56.1 Statement of Material Facts ("Def. Rule 56.1") ¶ 1, D.E. #45. Plaintiff then proceeded to the police station with her cousin, Kareem Kuylen, and one of Trapp's friends, Auquan Williams ("Williams"), in order to ascertain what had happened to her son. See Excerpts of Plaintiff's Deposition ("Pl. Dep.") at 22, D.E. #44-3; Transcript of Auquan Williams' Administrative Trial Testimony ("Williams Tr.") at 34, D.E. #44-9.

At the precinct, the waiting room was separated from the officers' working area and the information counter by a large Plexiglas wall, with a Plexiglas window that allowed station visitors to speak with the police officer manning the information desk. See Pl. Dep. at 24, 26, 28-29. When plaintiff arrived, she spoke with a female police officer at the information window. See id. at 24-25. According to plaintiff's deposition testimony, she informed the female officer that she was there to determine what had happened to her son, Trapp. See id. at 25. Plaintiff also informed her that plaintiff worked as a school safety officer for the New York City Police Department ("NYPD"). See Transcript of NYPD Advocate Office's Interview of Plaintiff at 5, D.E. #46-9. The female officer then went to find out the status of plaintiff's son. See id. While the female officer was gone, a young man sitting in a chair on

the inside of the officers' area of the precinct (but viewable through the Plexiglas wall) spoke to plaintiff. See id. at 26-27, 29; Pl. Rule 56.1 ¶ 4. He informed plaintiff that he, Shakeem Wright ("Wright"), had been in a fight with plaintiff's son, that it had been a fair fight, and that Wright had told the officers that he did not wish to press charges. See Pl. Dep. at 30, 33-34; Pl. Rule 56.1 ¶¶ 6-7; Transcript of Plaintiff's Administrative Trial Testimony ("Pl. Tr. ") at 48, D.E. #44-5. While speaking with Wright, plaintiff was "peeking" her head through the window. See Deposition Testimony of Joseph Riso ("Riso Dep.") at 19, 29, D.E. #44-4; Def. Rule 56.1 ¶ 5. Plaintiff told Wright that if Wright intended to press charges against her son, then she would press counter-charges against Wright in the event that her son had been injured in the fight. See Pl. Dep. at 36; Pl. Tr. at 49. According to Wright, plaintiff was not speaking "really loud" but rather was talking to him "like a parent would be talking to somebody trying to help her kid." Transcript of Interview of Shakeem Wright ("Wright Tr.") at 6, D.E. #44-8. Plaintiff did not threaten Wright, nor did she raise her voice. See id. at 10; Pl. Tr. at 51-52. Plaintiff testified that this conversation lasted about five minutes and that it was the only time she spoke with Wright. See Pl. Tr. at 52, 55, 58.

Around this time, police officer Joseph Riso ("Riso") observed Wright speaking with plaintiff, who was "peeking in" through the Plexiglass window; Riso did not know who plaintiff was at the time, nor could he hear what was being said. See Riso Dep. at 19, 29-30; Def. Rule 56.1 ¶ 10. Riso testified that he then proceeded to walk over to Wright and heard plaintiff state, in sum or substance, that if Wright pressed charges against her son, then she would press charges against Wright. See Riso Dep. at 30, 33; Def. Rule 56.1 ¶ 11.

According to plaintiff, Riso then asked Wright to come to the back of the station so he

could sign his statement.  See Pl. Dep. at 39.  Plaintiff, who testified that she was standing a few feet away and could hear the conversation, heard Wright respond that he did not want to press charges.  See Pl. Dep. at 38-39; Pl. Tr. at 49.  Plaintiff claims (and defendants dispute) that Riso then took out his handcuffs and threatened to "lock[] up" Wright if he refused to press charges, whereupon plaintiff told Riso that he was improperly trying to coerce a witness. See Pl. Dep. at 39-40; Pl. Tr. at 49; Riso Dep. at 75.  Plaintiff testified that, in speaking with Riso, she did not raise her voice or yell.  See Pl. Dep. at 42.  At that point, the female officer with whom plaintiff had originally spoken informed Riso that plaintiff was Trapp's mother. See Pl. Dep. at 40; Pl. Tr. at 49.

The parties dispute whether Riso, at that point, directed plaintiff to stop speaking with Wright.  See Riso Dep. at 33-34; Pl. Dep. at 40.   In any event, it is undisputed that plaintiff did not speak any further with Wright once Riso approached Wright.  Plaintiff testified that Riso and the female officer then "slammed" the sliding Plexiglas window closed and Riso headed away from the window and could be seen speaking with the desk sergeant, defendant Passamenti.  See Pl. Tr. at 49; Pl. Dep. at 40-41.[1]

What Riso said to Passamenti is unclear.  See Pl. Dep. at 41.  Passamenti testified that Riso informed him that Trapp's mother "was tampering with the victim of the incident."

---

[1]  Riso's testimony is internally inconsistent with respect to whether he directed plaintiff to stop speaking with Wright.  He first stated that he did not speak to her prior to communicating with Passamenti (see Riso Dep. at 33) but, two questions later, he acknowledged that he directed her to stop speaking with Wright but could not recall exactly what he said to her.  See id. at 33-34.  Throughout his deposition Riso could not recall many of the events surrounding plaintiff's arrest, including the contents of conversations with plaintiff, whether plaintiff flailed her arms or cursed in the waiting room or whether Riso spoke with Wright about pressing charges against Trapp.  See, e.g., id. at 34, 74-76.

Transcript of John Passamenti's Administrative Trial Testimony ("Passamenti Tr.") at 24, D.E. #44-6.  At Riso's deposition, however, Riso denied having characterized plaintiff as tampering with or threatening Wright.  See Riso Dep. at 35.  Instead, he testified that he merely repeated the exact words he had heard plaintiff state to Wright.  See id.

It is undisputed, however, that following the conversation with Riso, Passamenti opened the door to the waiting room and requested that plaintiff approach in order to discuss her son.  See Pl. Dep. at 41-42; Pl. Tr. at 49.  Plaintiff testified that she attempted to explain that Wright did not want to press charges.  See Pl. Dep. at 43; Pl. Tr. at 50; Def. Rule 56.1 ¶ 14.  According to plaintiff, Passamenti then told her:  "Who are you going to believe more than us?  Either the boys in blue or some regular street kid?"  Pl. Dep. at 43; Pl. Tr. at 50 (testifying that she took Passamenti's comment "not going to believe us" as "meaning that we all work for the same agency").  Passamenti asked plaintiff for her identification and, as she went to retrieve it, Passamenti handcuffed her.  See id. at 44-45; Pl. Tr. at 50.  Plaintiff testified that Passamenti then told her that "this could have went smoothly."  Pl. Tr. at 56.  Defendant police officer Louis Morselli  was tasked with processing plaintiff's arrest.  See Pl. Rule 56.1 ¶ 16b.

Plaintiff testified that during her time at the police station, she never cursed, yelled or raised her voice.  See Pl. Tr. at 51.  She further claimed that she was never directed to calm down or otherwise informed that she was creating a disturbance.  See id. at 51.  Trapp's friend, Williams, also testified that plaintiff remained "pretty calm" throughout and was not yelling.  See Williams Tr. at 42.

The same day as plaintiff's arrest, Wright was interviewed by representatives of the

NYPD Department Advocate's Office concerning his discussion with plaintiff.  See generally Wright Tr.[2]  Wright told the officers that plaintiff had asked him not to press charges but that "she wasn't yelling" and that, in fact, "she was talking to [him] nice."  Wright Tr. at 11.  Corroborating plaintiff's testimony, Wright also confirmed that "officer [Riso] said if you don't press charges[,] I'm going to lock you up."  Id. at 6.  Wright further stated that plaintiff did not cause him to change his mind about pressing charges against Trapp, because he had already informed the officers, prior to arriving at the precinct, that he would not be pressing charges.  See id. at 8.

## II.     The Prosecution and Subsequent Dismissal of the Charges

On September 21, 2006, a paralegal with the Kings County District Attorney's Office ("District Attorney") filed a sworn criminal complaint against plaintiff, charging her with obstruction of governmental administration in the second degree (N.Y. Penal L. § 195.05) and disorderly conduct (N.Y. Penal L. § 240.20(3)).  See Criminal Court Complaint (Sept. 21, 2006) ("September 2006 Criminal Complaint"), D.E. #44-7.  The September 2006 Criminal Complaint was largely based on information purportedly provided by Wright, who allegedly informed the District Attorney that plaintiff approached him and asked him whether he had been fighting with her son.  See id.  Further, the September 2006 Criminal Complaint alleged that Wright "bec[a]me alarmed and annoyed" with plaintiff when she told him that if he

---

[2]  The interview was ostensibly to address the "incident that occurred on Lyndon and Irving" (i.e., the fight with Trapp), see Wright Tr. at 1, but nearly all of the questions were about Wright's interactions with plaintiff.  See generally Wright Tr.  Tellingly, it appears that plaintiff's arresting officer Morselli (spelled phonetically in the transcript as "Marcelli") was present for Wright's interview but Riso, who witnessed the actual altercation with Trapp, was not.  See Riso Dep. at 77; Def. Rule 56.1 ¶ 2 (Riso observed Wright/Trapp fight).

pressed charges against her son, she would press charges against Wright.  See id.  Finally, the

September 2006 Criminal Complaint charged that the arresting officer, Morselli, told the

District Attorney that when plaintiff was asked to stop speaking with Wright, plaintiff "became

belligerent and began flailing [her] arms and began shouting who do these people think they

are."  Id.

      According to Morselli's deposition testimony, at some point, an attorney associated

with the District Attorney's Office, but whom Morselli could not name, informed him that

Wright no longer wanted to press charges and that a new complaint had to be filed against

plaintiff.  See Deposition of Louis G. Morselli ("Morselli Dep.") at 59, D.E. #44-11.   On

December 18, 2006, a superseding Criminal Court Complaint was filed against plaintiff.  See

Criminal Complaint (Dec. 18, 2006) ("December 2006 Criminal Complaint"), D.E. # 44-10.

Instead of being sworn to by a representative of the District Attorney, the December 2006

Criminal Complaint was now sworn to by Morselli.  In it, Morselli swore that he observed

plaintiff approach Wright and ask Wright if he had fought with her son, Trapp.  See id.

Morselli further swore that he observed that when Wright told her he was the victim of an

assault by Trapp, plaintiff told Wright that if he pressed charges against Trapp, then plaintiff

would press charges against Wright.  See id.  Finally, the December 2006 Criminal Complaint

included the same statement regarding plaintiff's "belligerent" behavior and "flailing arms" as

did the September 2006 Criminal Complaint.  See id.  However, Morselli conceded at his

deposition that the December 2006 Criminal Complaint was incorrect, in that he had not

observed the referenced conduct by plaintiff, but rather had been informed by Riso of what had

transpired.  See Morselli Dep. at 59-61.  According to Morselli's deposition testimony, he

informed the District Attorney of these errors, but apparently the December 2006 Criminal Complaint was never corrected.  See id. at 60.

On April 22, 2009, all charges against plaintiff were dismissed and filed under seal. See Pl. Rule 56.1 ¶ 17d.  A few months later, on September 11, 2009, plaintiff filed the instant civil action against Passamenti, Morselli and the City.  See generally Compl.  In her complaint, plaintiff alleges that Passamenti and Morselli violated her civil rights under 42 U.S.C. §§ 1981, 1983 and 1985.  See Compl. ¶¶ 43-44.  She also brings state law claims against Passamenti and Morselli for assault, battery, false arrest and imprisonment, malicious prosecution, and negligence.  See id. ¶¶ 45-56, 74-80.  In addition, plaintiff seeks to hold the City liable for the section 1983 violations under Monell v. Department of Social Services, 436 U.S. 658 (1978) (hereinafter "Monell"), and for the state law claims under a theory of respondeat superior.  See Compl. ¶¶ 57-80.

Following the completion of discovery, defendants moved for summary judgment to dismiss all claims.  See Notice of Motion, D.E. #42.[3]  In opposition to defendants' motion, plaintiff contends that there are genuine issues of material fact and that summary judgment should therefore be denied.  See Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Pl. Mem.") at 1, D.E. #52.  On October 11, 2011, Judge Matsumoto referred the motion to the undersigned magistrate judge.

---

[3]  Although defendants sought to dismiss the complaint in its entirety, defendants failed to move to dismiss plaintiff's claim under 42 U.S.C. § 1981.  See Order (Dec. 27, 2011), D.E. # 54.  Thereafter, the Court allowed defendants to supplement their motion in order to address the section 1981 claim.  See id.

## <u>DISCUSSION</u>

## I.     **Summary Judgment Standard**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment may not be granted unless the record "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal quotations and citation omitted). Once the movant does so, the non-moving party may not rest upon the allegations or denials of her pleading but must set forth specific facts that raise a genuine issue for trial. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Samuels v. Mockry</u>, 77 F.3d 34, 36 (2d Cir. 1996). "In determining whether there is a genuine issue of material fact, the court must resolve all ambiguities, and draw all inferences, against the moving party." <u>Sista v. CDC Ixis N.A., Inc.</u>, 445 F.3d 161, 169 (2d Cir. 2006) (citations omitted). Summary judgment "is properly granted only when no rational finder of fact could find in favor of the non-moving party." <u>Carlton v. Mystic Transp., Inc.</u>, 202 F.3d 129, 134 (2d Cir. 2000).

## II.     **Section 1983 Claims Against The Individual Defendants**

### A.  **False Arrest Claim**

The Fourth Amendment protects against unreasonable "seizures." <u>Murphy v. Lynn</u>, 118 F.3d 938, 944 (2d Cir. 1997). When an arrest is made in violation of the Fourth Amendment, a party may bring a claim under 42 U.S.C. § 1983 to recover damages for the

constitutional injury. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Wallace v. Suffolk Co. Police Dep't, No. 04-CV-2599, 2011 WL 3625574 (RRM)(WDW), at *5 (E.D.N.Y. Aug. 15, 2011) ("The 'basic purpose' of Section 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'") (quoting Carey v. Piphus, 435 U.S. 247, 254 (1978)). To sustain a claim for false arrest, a plaintiff must establish that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not "otherwise privileged." See Singer v. Fulton Cnty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995).

### 1. Existence of Probable Cause

The existence of probable cause is a complete defense to a claim for false arrest. Weyant, 101 F.3d at 852. "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Id. (collecting cases). The existence of probable cause must be determined by reference to the totality of the circumstances. See Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010) (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest, i.e., it is objective rather than subjective." Torraco v. Port Auth. of N.Y. & N.J., 615 F.3d 129, 139 (2d Cir. 2010) (internal citation and quotations omitted).

In moving for summary judgment in this case, defendants argue that there was probable cause to arrest plaintiff for obstruction of governmental administration, N.Y. Penal L. §

195.05.[4]  See Def. Mem. at 6-8.  Section 195.05 of New York's Penal Law provides that a

person is guilty of obstructing governmental administration ("OGA") when that person:

> intentionally obstructs, impairs or perverts the administration of law or other
> governmental function or prevents or attempts to prevent a public servant from
> performing an official function, by means of intimidation, physical force or
> interference, or by means of any independently unlawful act . . . .

N.Y. Penal L. § 195.05.  In construing the statute's reference to "interference," New York

courts have held that mere words are not sufficient to constitute obstruction; rather, the

interference must be "in part at least, physical in nature."  In re Kendell R., 897 N.Y.S.2d 83,

84 (1st Dep't 2010) (quoting People v. Case, 42 N.Y.2d 98, 102 (1977)).

Defendants seem to suggest that section 195.05 no longer requires physical interference

and that verbal interference with police activity is sufficient to sustain an OGA charge.  See

Def. Mem. at 6-7 (citing, inter alia, People v. Romeo, 779 N.Y.S.2d 860, 861-62 (3d Dep't

2004), and In re Davan L., 91 N.Y.2d 88, 91 (1997)).  However, the cases on which

defendants rely, Romeo and Davan L., involved interference that was, at least in part,

arguably physical.  In Romeo, the defendant repeatedly physically approached officers while

they attempted to arrest and restrain his girlfriend, despite the officers' repeated direct requests

that he "stay away and in a certain spot."  Romeo, 779 N.Y.S.2d at 861.  The Third

Department held that the defendant's approach in defiance of repeated orders by the police

constituted OGA.  See id. at 862.  In Davan L., the New York Court of Appeals held that

---

[4]  Defendants concede that there are disputed facts precluding summary judgment as to the
probable cause for plaintiff's arrest for disorderly conduct under section 240.20(3) of New
York's Penal Law.  See Defendants' Memorandum of Law in Support of Its Motion for
Summary Judgment ("Def. Mem.") at 13, D.E. #43.

there was probable cause to arrest a teenager for obstruction, where the teen was specifically

warned by an officer about a narcotics operation but nonetheless rode his bicycle toward

known criminal activity to warn the potential targets of the police presence.  See 91 N.Y.2d at

91.  Distinguishing the facts in Case, 42 N.Y.2d 98, while affirming its requirement of

physical interference, the Davan L. Court found that the teen's actions caused "a physical

reaction and dispersal" of the targets, which elevated his conduct to OGA.  Davan L., 91

N.Y.2d at 91-92; see Skinner v. Chapman, 680 F.Supp.2d 470, 476 (W.D.N.Y. 2010)

(interpreting Davan L. as establishing that non-physical interference invoking a "physical

reaction" can suffice for purposes of section 195.05).  Indeed, in Davan L., the New York

Court of Appeals clearly relied on both the verbal and physical components of the juvenile's

behavior.  See Davan L., 91 N.Y.2d at 92 ("We agree . . . that the juvenile's interrelated

conduct – *actions coupled with words* – fits within the originally promulgated and

contemplated specifications of Penal Law § 195.05.") (emphasis added); see also People v.

Covington, 793 N.Y.S.2d 384, 389 (1st Dep't 2005) (as in Davan L., the defendant

"interjected himself into an obvious, defined area of police activity," i.e., an apartment about

to be searched, and shouted warning of police presence).

     Thus, contrary to defendants' argument, recent caselaw makes clear that some physical

aspect to the interference -- albeit not necessarily physical *force* -- must be present to constitute

a violation of section 195.05.   See In re Kendell R., 897 N.Y.S.2d at 83-84 (juvenile who

failed to comply with police directive to disperse, and who used "obscene language but no acts

of physical resistance" in response to police breaking up apparent fight, did not violate section

195.05, where "[a]ny physical contact between [the juvenile] and an officer was initiated by

the officer"); People v. Baltes, 904 N.Y.S.2d 554, 556-57 (3d Dep't 2010) (sustaining OGA

charge where no physical force but defendant -- who "came increasingly closer" to police as

they attempted to perform sobriety test on defendant's friend -- was "belligerent, uncooperative

and refused a direct request that he either remain calm and quiet or leave the area"); see also

Wood v. Town of East Hampton, No. 08-CV-4197, 2010 WL 3924847, at *12-14 (E.D.N.Y.

Sept. 30, 2010) (distinguishing Covington and Davan L., and denying summary judgment,

because there was an issue of fact as to whether plaintiff engaged in "purely verbal interference

which could not, on its own, satisfy the physical component under Penal Law § 195.05")

(internal quotations and citation omitted);  Niles v. City of Oneida, No. 6:06-CV-1492

(GTS/GHL), 2009 WL 799971, at *7 (N.D.N.Y. Mar. 25, 2009) (issue of fact as to whether

accused physically interfered with officers' restraint of family members precluded summary

judgment on claim of false arrest for OGA,  since "words alone do not give rise to probable

cause to arrest for obstruction").

    As in the cases cited above, here there is a genuine issue of material fact as to whether

a reasonable officer would believe that plaintiff intentionally and physically interfered with

defendants' investigation of the Trapp/Wright fight.  Cf. Provost v. City of Newburgh, 262

F.3d 146, 158 (2d Cir. 2001) (jury could reasonably conclude that plaintiff banged on and

yelled through glass reception window at police station for "legitimate purpose of getting the

desk officer's attention, not to cause public inconvenience, annoyance or alarm," as

contemplated by the disorderly conduct statute).  As an initial matter, a reasonable jury could

find that there was no "physical" interference where plaintiff merely leaned her head through a

window to speak with Wright.  Moreover, plaintiff's testimony concerning Riso's act of

shutting the Plexiglas window – according to plaintiff, in response to her objection to Riso's threat to lock up Wright – could support a reasonable inference that plaintiff did not physically interfere, as she was completely separated from Wright and Riso by a Plexiglas wall.

Even assuming that there was the requisite proof of physical interference or that verbal interference would suffice, a rational fact-finder could nevertheless find that defendants lacked probable cause to arrest plaintiff. Plaintiff contends that she did not raise her voice in speaking with Wright and that defendants never directed her to stop speaking with Wright.[5] Further, plaintiff testified that after speaking with Wright once, she never spoke with him again. In addition, plaintiff told Passamenti that Wright informed her that he did not wish to press charges.[6] A rational juror could find that, on these facts alone, a reasonable officer would not conclude that plaintiff interfered with defendants' investigation of her son's arrest.[7]

---

[5] Even assuming that defendants directed plaintiff to stop speaking with Wright (which plaintiff disputes), defendants point to no evidence that she ignored such an order. Cf. Berger v. Schmitt, No. 02-CV-0155E(SR), 2003 WL 21383007, at *2-3 (W.D.N.Y. Apr. 18, 2003) (summary judgment granted on false arrest for violating section 195.05, where it was undisputed that police officers instructed plaintiff "to leave the premises and that he nonetheless failed to comply with such order"); Decker v. Campus, 981 F.Supp. 851, 858 (S.D.N.Y. 1997) (granting summary judgment in favor of defendants, where plaintiff, *inter alia*, failed to comply with order to "step back," physically broke away from sheriff and approached rescue worker, and thus "physically interfered with official functions").

[6] According to plaintiff, Wright was the one who initiated the conversation with her, but it is unclear from the deposition testimony whether Passamenti or Riso were made aware of this fact in discussing the situation with plaintiff. Further, while the record suggests that Wright had informed the police prior to arriving at the precinct that he did not wish to press charges against Trapp – i.e., before Wright ever spoke with plaintiff – it is unclear to whom Wright made this statement. Thus, the the Court does not consider these two facts in analyzing the perspective of a reasonable arresting officer.

[7] In their Rule 56.1 Statement, defendants omit plaintiff's allegation that Riso threatened to
(continued...)

Accordingly, for the reasons stated above, a reasonable juror could conclude that the police lacked probable cause to arrest plaintiff for obstruction of governmental administration under section 195.05. See Diodati v. City of Little Falls, No. 6:04-CV-446(FJS/DEP), 2007 WL 189130, at *3 (N.D.N.Y. Jan. 22, 2007) (summary judgment precluded where grandmother denied interfering with arrest of grandson, in contrast to police's contention that she was disorderly and ignored request to return to her vehicle: "[T]he reasonableness of their beliefs regarding probable cause for Plaintiff's arrest depends upon whether the Court credits Plaintiff's or Defendants' version of sharply disputed facts."); see also Lee v. McCue, 410 F.Supp.2d 221, 223, 225-26 (S.D.N.Y. 2006) (denying summary judgment on OGA false arrest charge where there was an issue of fact as to whether plaintiff interfered with officer's questioning of a witness and "bumped" officer with his body).[8]

---

[7](...continued)
lock up Wright if he did not press charges against Trapp, and thus defendants imply that they dispute this fact. See generally Def. Rule 56.1. In defendants' memorandum of law, they posit that, even if accepted as true, the fact that Wright told Riso he was unwilling to press charges gave rise to a reasonable belief that plaintiff had successfully intimidated Wright, thereby establishing probable cause to arrest plaintiff for OGA. See Def. Mem. at 8. However, under plaintiff's version of the facts, she was not raising her voice and was speaking to Wright as a concerned parent, which Wright corroborated in his interview with police. Accepting these facts as true, a reasonable officer would not believe that Wright was intimidated by a woman poking her head through a glass window, stating, in the tone of a concerned parent, that she would press counter-charges. Indeed, assuming plaintiff's testimony concerning Riso's threat is true, Wright was not even intimidated by a *police officer's* threat to lock him up if he failed to press charges.

[8] The facts of the instant case bear no resemblance to those in Mitchell v. City of Albany, No. 08-CV-871, 2010 WL 1235389 (N.D.N.Y. Mar. 31, 2010), where it was undisputed that the mother of a daughter accused of fighting made repeated requests to release her daughter, was visibly upset, raised her voice, and began walking towards the police car where her daughter was held. See id. at *4 (granting defense motion for summary judgment on OGA false arrest

(continued...)

Therefore, given the existence of disputed material facts on the issue of probable cause, this Court recommends that defendants' motion for summary judgment on plaintiff's false arrest claim be denied.

## 2. Qualified Immunity

Defendants further argue that, even if the Court finds disputed issues of fact as to whether the individual defendants falsely arrested plaintiff without probable cause, summary judgment should be granted on the basis of qualified immunity. See Def. Mem. at 18-22. Qualified immunity is an affirmative defense that shields public officials from liability for civil damages where (1) their conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for them to believe that their acts did not violate those rights.[9] See Weyant, 101 F.3d at 857-58 (citing Anderson v. Creighton, 483 U.S. 635, 638-39

---

[8](...continued)
claim where, on the undisputed facts, the police could reasonably have believed that the mother was going to try to release her daughter from the police car).

[9] Defendants do not dispute that "the right not to be arrested without probable cause is clearly established[,]" Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000) (collecting cases), but they contend that it was not clearly established at the time of plaintiff's arrest whether verbal interference could support a finding of probable cause under section 195.05. See Def. Mem. at 21-22. Defendants construe the relevant right far too narrowly. Although the relevant right should not be so broadly defined that an officer would fail to understand that he or she is violating the law, see Wilson v. Layne, 526 U.S. 603, 614-15 (1999), the Second Circuit has made clear that "the right to be free from an arrest without probable cause" is sufficiently specific for purposes of qualified immunity. See, e.g., Hargroves v. City of New York, 411 F.App'x 378, 382 (2d Cir. Feb. 22, 2011); Gilles v. Repicky, 511 F.3d 239, 245 (2d Cir. 2007); Robison v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (noting that "it has long been clearly established that an arrest without probable cause is a constitutional violation"). Here, the issue is not whether "the official's permissible actions were clearly delineated at the time of the acts complained of"; rather, the qualified immunity defense in this case presents the fact-specific question of whether "it was objectively reasonable for [defendants] to believe that [their] acts did not violate those rights." Robison, 821 F.2d at 921.

(1987)).

An officer is entitled to qualified immunity on false arrest claims if he can establish the existence of probable cause or "arguable probable cause" -- i.e., if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotations omitted). The qualified immunity test is an objective one. See Doninger v. Niehoff, 642 F.3d 334, 353 (2d Cir. 2011) (citing Anderson, 483 U.S. at 641). "[I]f officers of reasonable competence could disagree" as to whether probable cause existed, "immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986). But "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that" probable cause existed, "[d]efendants will not be immune . . . ." Id. Moreover, summary judgment based on qualified immunity should not be granted where material issues of fact frustrate the Court's review of the reasonableness of the actions in question. See, e.g., Weyant, 101 F.3d at 858.

As noted above, there are genuine issues of material fact as to what transpired at the police station at the time of plaintiff's arrest. Plaintiff contends that she did not raise her voice in speaking with Wright, that she spoke with him briefly and only once through a Plexiglas window, was never directed to stop speaking with him, and did not otherwise threaten or intimidate Wright. Whether officers of reasonable competence could disagree on the existence of probable cause depends upon the material circumstances surrounding the arrest itself, which are in dispute. Therefore, summary judgment on qualified immunity under these circumstances is inappropriate. See Bradley v. Jusino, 374 F.App'x 144, 146-47 (2d Cir. Apr.

14, 2010) (affirming district court's denial of summary judgment on the ground of qualified immunity, given disputed facts bearing on existence of probable cause or arguable probable case to arrest for OGA); <u>Wood</u>, 2010 WL 3924847, at *17-18 (denying defense motion for summary judgment based on qualified immunity from suit for false arrest on OGA charge); <u>Diodati</u>, 2007 WL 189130, at *5 (denying summary judgment on qualified immunity given disputed facts underlying officer's reasonable belief concerning probable cause for OGA arrest); <u>Lee</u>, 410 F.Supp.2d at 226 ("If we accept plaintiff's version of events, . . . then [plaintiff] did nothing to provoke his [OGA] arrest and the officers had neither probable cause nor arguable probable cause to arrest him."); <u>see also</u> <u>Ostroski v. Town of Southold</u>, 443 F.Supp.2d 325, 339 (E.D.N.Y. 2006) ("Since there is a disputed issue of material fact as to whether the circumstances would allow an objectively reasonable officer to believe that probable cause existed to prosecute for resisting arrest, defendants are not entitled to qualified immunity as a matter of law."); <u>cf.</u> <u>Lennon v. Miller</u>, 66 F.3d 416, 421 (2d Cir. 1995) (summary judgment in defendants' favor based on qualified immunity is appropriate if the only conclusion a rational jury could reach is that reasonable officers would disagree about legality of the defendants' conduct).

### B. Excessive Force Claim

In addition to proscribing unreasonable seizures, the Fourth Amendment "protects individuals from the government's use of excessive force when detaining or arresting individuals." <u>Jones v. Parmley</u>, 465 F.3d 46, 61 (2d Cir. 2006) (citation omitted). A plaintiff claiming excessive force must show that the force used was objectively unreasonable. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395-96 (1989). In determining reasonableness, the Court

must balance the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake. See Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010) (citing Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004)). In conducting that balancing, courts consider three factors: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." Id. (citations omitted).

In essence, plaintiff's excessive force claim stems from Passamenti's grabbing her in order to handcuff her. See Pl. Mem. at 13. Plaintiff alleges that Passamenti's handcuffing caused plaintiff to "fear for her life and safety." Id. Plaintiff conceded at her deposition that the handcuffing did not result in any physical injury. See Pl. Dep. at 18, attached to Letter With Page Improperly Omitted, D.E. #53. There is no allegation or evidence that plaintiff complained that the handcuffs were too tight and/or that officers ignored her complaints. Defendants contend that, on these facts, no reasonable jury could find that defendants used excessive force in executing plaintiff's arrest. See Def. Mem. at 14-15; Reply Memorandum of Law In Further Support of Motion for Summary Judgment ("Def. Reply") at 6-7, D.E. #51.

In response, plaintiff argues that any type of bodily contact resulting from an unlawful arrest (i.e., one unsupported by probable cause) is sufficient to constitute a claim for excessive force. See Pl. Mem. at 13-14. In other words, according to plaintiff, summary judgment is inappropriate because, as stated above, the material facts surrounding probable cause are in dispute. See supra pp. 13-15. Plaintiff's theory ignores the Second Circuit's 2006 decision in

<u>Jones v. Parmly</u>, which clarified that the "reasonableness" test enunciated by the Supreme Court in <u>Graham</u> is the relevant test for evaluating an excessive force claim, even where the arrest lacked probable cause. <u>See Jones</u>, 465 F.3d at 62; <u>see also</u> <u>Stokes v. City of New York</u>, No. 05-CV-0007 (JFB) (MDG), 2007 WL 1300983, at *10-11 (E.D.N.Y. May 3, 2007) (citing <u>Jones</u> and rejecting plaintiff's argument that any force during his arrest was *per se* excessive because initial entry was unlawful).

Having determined that the absence of probable cause does not establish excessive force, the Court next considers whether plaintiff's excessive force claim can survive summary judgment where no physical injury resulted. In <u>Stokes v. City of New York</u>, 2007 WL 1300983, at *1-2, a woman brought an excessive force claim arising out of her arrest for forgery. The <u>Stokes</u> plaintiff did not allege any physical injury but rather claimed "that the arrest resulted in emotional trauma." <u>Id</u>. at *2. In granting a defense motion for summary judgment on the excessive force claim, the <u>Stokes</u> court concluded that "routine" handcuffing at the time of arrest, without more, could not sustain an excessive force claim. <u>See id</u>. at *11-12 (citing <u>Esmont v. City of New York</u>, 371 F.Supp.2d 202, 214 (E.D.N.Y. 2005)). In doing so, the court noted that the plaintiff did not claim that the handcuffs were too tight or "that she suffered any physical injury as a result of the handcuffing." <u>Stokes</u>, 2007 WL 1300983, at *12; <u>see also</u> <u>Pace v. Town of Southampton</u>, 678 F.Supp.2d 79, 84 (E.D.N.Y. 2010) (defendants entitled to summary judgment on excessive force claim where plaintiff did not assert that handcuffs were unreasonably tight, nor did she sustain any injuries to her wrists); <u>Jouthe v. City of New York</u>, No. 05-CV-1374 (NGG)(VVP), 2009 WL 701110, at *14

(E.D.N.Y. Mar. 10, 2009) (granting defense motion for summary judgment on excessive force claim and collecting cases in which courts granted summary judgment where handcuffing resulted in either no injury or minor injury).

Like the plaintiff in Stokes, plaintiff here does not claim any sort of physical injury or otherwise point to any facts suggesting that her arrest involved anything other than routine handcuffing.[10]  As such, as a matter of law, no rational jury could conclude that defendants used excessive force in arresting plaintiff.  Accordingly, defendants' motion for summary judgment on the excessive force claim should be granted.

### C.  Malicious Prosecution Claim

To sustain her malicious prosecution claim, plaintiff must show that (1) defendants initiated a prosecution against plaintiff (2) without probable cause to believe the proceeding could succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor.  See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997).  Because the deprivation of liberty must have been effected "pursuant to legal process" -- i.e., in the form of an arrest warrant or, as here, an arraignment following a warrantless arrest -- plaintiff must also establish that the prosecution caused a post-arraignment deprivation of liberty (such as being bound-over for trial).  See Singer, 63 F.3d at 117.  Defendants argue

---

[10]  Further, although plaintiff's memorandum of law alleges that plaintiff was in fear for her life and safety, see Pl. Mem. at 13, plaintiff cites no admissible evidence in support of this contention, which therefore cannot defeat summary judgment.  See Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995) ("[M]ere conclusory allegations or denials in legal memoranda . . . are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (internal quotation marks and citations omitted).

that plaintiff fails on nearly all of the claim's elements, <u>see</u> Def. Mem. at 9-13, which the Court considers in turn.

### 1. Initiation of Prosecution

Generally speaking, a defendant initiates a criminal proceeding when the defendant plays an active role in the prosecution. <u>See</u> <u>Manganiello</u>, 612 F.3d at 163. In cases involving malicious prosecution claims against police officers, "courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors." <u>Espada v. Schneider</u>, 522 F.Supp.2d 544, 553 (S.D.N.Y. 2007) (citations omitted). In her civil complaint, plaintiff alleges that Morselli and Passamenti fabricated the factual basis for the criminal charges against her. <u>See</u> Compl. ¶ 34. Defendants contend that by swearing to the September 2006 Criminal Complaint, the District Attorney independently decided to commence the prosecution, thereby insulating defendants from liability for malicious prosecution. <u>See</u> Def. Mem. at 10.

To be sure, there is in fact a presumption that the prosecution exercises independent judgment in commencing a criminal proceeding; nevertheless, a police officer may not escape liability when that officer "withholds relevant and material information or creates false information likely to influence a jury's decision and forwards that information to prosecutors." <u>Caraballo v. City of New York</u>, No. 05 Civ. 8011 (GEL), 2007 WL 1584202, at *7 (S.D.N.Y. May 31, 2007) (Lynch, J.) (quotation and citations omitted); <u>see</u> <u>also</u> <u>Cameron v.</u>

City of New York, 598 F.3d 50, 64 (2d Cir. 2010) ("[G]enerally in malicious prosecution actions alleging that a police officer provided false information to a prosecutor, what prosecutors do subsequently has no effect whatsoever on the police officer's initial, potentially tortious behavior.").

Seeking to avoid application of this "false information" exception, defendants argue that the September 2006 Criminal Complaint was "based on information provided by [] Wright directly to [the Kings County District Attorney's Office]." Def. Mem. at 10-11. However, the September 2006 Criminal Complaint also included information allegedly observed by Morselli, the officer who processed plaintiff's arrest. See September 2006 Criminal Complaint. In addition, the December 2006 Criminal Complaint was filed based solely on statements sworn to by Morselli, even though he later testified that the contents of the document were incorrect and should have been based on Riso's observations. See Morselli Dep. at 59-60. Further, the record suggests that prior to the filing of the sworn September and December 2006 Criminal Complaints, Morselli learned that, before speaking with plaintiff, Wright had told the police that he did not want to press charges against Trapp. See supra p. 6 n.2 (Morselli present for Wright interview on September 20, 2006). A jury could deem this an improper withholding of material facts.

As for Passamenti's involvement with the prosecution, while Passamenti's name does not appear on either criminal complaint and plaintiff has cited no evidence that he took an active role in the prosecution, plaintiff has raised a triable issue of fact concerning Passamenti's motive in arresting plaintiff. For example, a jury could interpret Passamenti's

comments regarding "the boys in blue" and "this could have gone smoothly" as evidence tending to show that Passamenti arrested plaintiff as a result of her challenging his (and Riso's) authority. See Espada, 522 F.Supp.2d at 553 (presumption of independent prosecutorial decision was sufficiently rebutted to give rise to triable issue of fact as to whether officer initiated criminal proceeding, where, even absent proof of active or purposeful conduct by officer, jury could infer officer's role in underlying arrest from totality of circumstances). Further, Passamenti is not insulated from liability merely because it was Morselli who filled out the arrest papers, if he did so based on information from Passamenti, the officer who ultimately made the decision to arrest. See Llerando-Phipps v. City of New York, 390 F.Supp.2d 372, 376, 383 (S.D.N.Y. 2005) (detective who reported that he recovered drugs in police van near where plaintiff had been held could be found sufficiently involved in initiating criminal proceeding where he relayed information to arresting officer, who signed accusatory instrument); see also Caraballo, 2007 WL 1584202, at *7 (issue of fact as to whether police officer gave untruthful or materially incomplete information to prosecutor, thereby precluding summary judgment).

Accordingly, with respect to the first element of the malicious prosecution claim, there is a disputed issue of material fact as to whether Passamenti and/or Morselli initiated the criminal proceeding against plaintiff.

### 2. Probable Cause

As for the second element of the malicious prosecution claim, there are genuine issues of material fact as to whether defendants had probable cause (or arguable probable cause) to arrest plaintiff. See *supra* pp. 13-18.

### 3. Malice

In a malicious prosecution claim, the element of malice may be inferred when an arrest is made without probable cause. See Ricciuti, 124 F.3d at 131 (jury could find malice based on lack of probable case); Llerando-Phipps, 390 F.Supp.2d at 383 ("Here, a jury could infer malice from a lack of probable cause, which is sufficiently in dispute to survive summary judgment."). As demonstrated above, there are disputed issues of material fact concerning the existence of probable cause, and thus the issue of malice must likewise be reserved for determination by a jury.

### 4. Termination in Favor of Plaintiff

Defendants do not dispute that the subject criminal proceeding terminated favorably to plaintiff, see generally Def. Mem. at 9-13, thereby establishing the fourth element of plaintiff's malicious prosecution claim.

### 5. Post-Arraignment Deprivation of Liberty

Defendants do not dispute that plaintiff suffered a post-arraignment deprivation of liberty, the final element of the malicious prosecution claim. Instead, based on their assumption that there was probable cause for plaintiff's arrest for OGA, defendants argue that, to the extent that plaintiff is asserting a malicious prosecution claim for the disorderly conduct arrest, such a claim must fail because plaintiff suffered no greater deprivation of liberty as a result of the latter claim. See Def. Mem. at 13; Def. Reply at 4 n.1. As the premise of defendants' argument is incorrect, in that there are genuine issues of fact concerning probable cause for the OGA charge, defendants' argument concerning the disorderly conduct claim is

unavailing.

Given the existence of genuine issues of material fact as to the initiation, malice and probable cause elements of plaintiff's malicious prosecution claim, this Court recommends that defendants' motion for summary judgment on that claim be denied.[11]

## III.    Section 1981 Claim Against The Individual Defendants

To sufficiently state a section 1981 claim, a plaintiff must establish "(1) membership in a racial minority, (2) defendant's intent to discriminate on the basis of race; and (2) discrimination concerning one or more of the activities enumerated in the statute." <u>Rateau v. City of New York</u>, No. 06-CV-4751 (KAM)(CLP), 2009 WL 3148765, at *12 (E.D.N.Y. Sept. 29, 2009) (Matsumoto, J.) (citing <u>Mian, Donaldson, Lufkin & Jenrette Sec. Corp.</u>, 7 F.3d 1085, 1087 (2d Cir. 1993)).  Defendants contend that plaintiff fails to establish the second element – namely, defendants' discriminatory intent.  <u>See</u> Defendants' Supplemental Memorandum of Law in Further Support of Their Motion ("Def. Supp. Mem.") at 2, D.E. #55.

On summary judgment, a plaintiff need not establish discriminatory intent with direct evidence, but, rather, he or she may point to circumstantial evidence showing that the defendants' acts were "purposefully discriminatory and racially motivated." <u>Dennis v. Delta Air Lines, Inc.</u>, No. 10-CV-973 (DLI)(LB), 2011 WL 4543487, at *4 (E.D.N.Y. Sept. 29, 2011) (quotation and citations omitted).  Because "a defendant is unlikely to leave a smoking

---

[11]  The factual issues surrounding the existence of probable cause likewise defeat defendants' motion for summary judgment on the malicious prosecution claim based on their qualified immunity defense.  <u>See</u> <u>generally</u> <i>supra</i> pp. 16-18.

gun," courts should, in assessing the weight of the circumstantial evidence, use an "expansive approach to the record." <u>Wong v. Yoo</u>, 649 F.Supp.2d 34, 69 (E.D.N.Y. 2009) (citations omitted).

In support of her section 1981 claim, plaintiff principally argues that a jury could infer that Passamenti and Morselli – two Caucasian male officers – were offended by plaintiff's challenge to their authority because she was an "inferior black woman, who held an arguably lesser job in the NYPD[.]" Plaintiff's Supplemental Memorandum of Law in Further Opposition to Summary Judgment ("Pl. Supp. Mem.") at 4, D.E. #56. As support for this argument, plaintiff cites Passamenti's comments concerning "the boys in blue," and "this could have gone smoothly." <u>Id</u>. at 3-4. Plaintiff contends that the tenor of this conversation supports a finding that the officers were creating a divide between defendants and plaintiff. <u>See</u> <u>id</u>. at 3 (interpreting Passamenti's "gone smoothly" comment as "if Plaintiff would have believed Defendants solely because they all worked for the NYPD[,]" things could have gone smoothly). Plaintiff contends that, viewing the record in its entirety, a reasonable juror could find that defendants "were motivated by something other than the desire to see justice served." <u>Id</u>. at 4.

In making this argument, plaintiff misses the point. For section 1981 purposes, it is irrelevant whether defendants were motivated by something other than the desire to see justice served -- rather, the essential inquiry is whether defendants were motivated by *race*. <u>See</u> <u>Chavez v. Iberia Foods Corp.</u>, No. 05 CV 2464 (NG)(RER), 2007 WL 1959028, at *4 (E.D.N.Y. June 29, 2007) (dismissing section 1981 retaliation claim based on age because

"Section 1981 was enacted to prevent discrimination on the basis of race or ethnic characteristics"). The only circumstantial evidence relating to race is the fact that plaintiff and defendants are of different races. Clearly, this is insufficient to survive a summary judgment claim based on discriminatory intent. See Johnson v. City of New York, 669 F.Supp.2d 444, 450 (S.D.N.Y. 2009) (dismissing section 1981 claim because "mere fact that plaintiff and defendants are of different races, standing alone" is insufficient). While plaintiff presents a plausible theory that defendants may have resented plaintiff's challenge of authority to her fellow NYPD brethren, this argument has nothing to do with plaintiff's race. Moreover, plaintiff cites no evidence that the treatment afforded plaintiff differed from that afforded to persons of other races. See Lizardo v. Denny's, Inc., 270 F.3d 94, 101 (2d Cir. 2001) (affirming grant of defense motion for summary judgment on section 1981 claim); Dennis, 2011 WL 4543487, at *4 (where plaintiff provides no factual evidence showing any similarly situated individuals of another race were treated differently, defendant entitled to summary judgment on section 1981 claim). In short, because "a jury cannot infer discrimination from thin air[,]" the Court declines to conclude defendants' alleged mistreatment of plaintiff "must have been related to [her] race." See id. at 104. Therefore, the Court recommends granting defendants' motion to dismiss plaintiff's section 1981 claim.

IV.     **Section 1985 Claim Against the Individual Defendants**

Defendants move to dismiss plaintiff's claim pursuant to 42 U.S.C. § 1985, which defendants construe as arising out of subsection three of section 1985, relating to conspiracies to violate civil rights. See Def. Mem. at 16. Defendants complain that "[p]laintiff's generalized allegations, unsupported by any evidence of a conspiratorial agreement, are

patently insufficient as a matter of law to withstand a motion for summary judgment." Id. at 17. In plaintiff's opposition papers, plaintiff references section 1985 in a heading, see Pl. Mem. at 25, but the heading relates to a section addressing plaintiff's Monell claims against the City under section 1983. See id. at 25-26. Plaintiff's submission is otherwise silent as to her section 1985 claim. See Def. Reply at 7 (noting that plaintiff failed to address her section 1985 claim and requesting that the Court deem the claim abandoned).

To establish a claim under section 1985(3), plaintiff must show: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." Hollman v. Cnty. of Suffolk, No. 06-CV-3589 (JFB)(ARL), 2011 WL 2446428, at *11 (E.D.N.Y. June 15, 2011) (quoting Mian, 7 F.3d at 1087).

Plaintiff's complaint contains only conclusory allegations of a conspiracy, see Compl. ¶ 38, without reciting any facts suggesting that defendants conspired to violate her rights. In these circumstances, defendants are entitled to summary judgment on this claim. See Hollman, 2011 WL 2446428, at *11 (conclusory allegations as to discriminatory animus of conspiracy were insufficient to survive summary judgment); cf. Webb v. Goord, 340 F.3d 105, 111 (2d Cir. 2003) (affirming dismissal of section 1985(3) claim where plaintiffs did not allege, "except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants"). Furthermore, even if the conclusory allegations were arguably sufficient, plaintiff has abandoned this claim by failing to oppose defendants' motion on this

point.  See, e.g., Davis v. City of N.Y. Health & Hosps. Corp., No. 08 Civ. 0435(LAP),

2011 WL 4526135, at *6 (S.D.N.Y. Sept. 29, 2011) (dismissing section 1985 claim as

"abandoned" where plaintiff failed to address claim in his opposition to summary judgment).

Accordingly, this Court recommends that summary judgment be granted dismissing

plaintiff's section 1985 claim.

**V.      Municipal Liability For Section 1983 Violation**

In accordance with Monell v. Department of Social Services, a municipality may not be

held liable for a violation of 42 U.S.C. § 1983 under a theory of *respondeat superior*.  See

Monell, 436 U.S. at 694.  A municipality may be liable, however, for constitutional violations

committed by its employees if the violations stemmed from a municipal policy or custom.  See

Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122-23 (2d Cir. 1991) (collecting cases).

Defendants argue that plaintiff can point to no evidence in the record to support the

existence of a city policy or custom.  See Def. Mem. at 22-24.  Plaintiff counters that there is

an unofficial custom and policy of a "blue shield" code of silence among the City's police

officers.  See Pl. Mem. at 26.  Plaintiff predicates her argument on Passamenti's alleged

comments concerning the "boys in blue" and the fact that he chose to arrest plaintiff, rather

than issue a desk summons.  See id. at 26.

Even accepting the inferences drawn by plaintiff from Passamenti's conduct, a single

incident of misconduct that involves only actors below the policymaking level is, as a matter of

law, insufficient to establish the existence of a policy.  See Ricciuti, 941 F.2d at 123.  While

the existence of a policy may be inferred from circumstantial evidence, such as a defendant's

failure to train its employees, see id., plaintiff here has pointed to no such evidence, but instead relies on mere speculation and conjecture. See Guentangue v. City of New York, No. 09 Civ. 7369(DAB)(GWG), 2011 WL 3586121, at *4 (S.D.N.Y. Aug. 10, 2011), adopted by 2011 WL 4069558 (S.D.N.Y. Sept. 13, 2011) (dismissing Monell claim on summary judgment, where plaintiff provided no evidence of a policy but instead relied on mere assertions in his complaint); Reape v. City of New York, No. 09 Civ. 1363(BMC)(LB), 2010 WL 4789285, at *3 (E.D.N.Y. Nov. 17, 2010) (plaintiff's argument – that the officers' use of excessive force on him raised an issue of fact as to the existence of a municipal custom or policy to use excessive force – was insufficient to defeat summary judgment on his Monell claim); Ostroski, 443 F.Supp.2d at 346-47 ("mere speculation and conjecture" as to city's custom or policy to commit constitutional violations was insufficient to defeat summary judgment on Monell claim).

Therefore, this Court recommends granting defendants' motion for summary judgment as to plaintiff's Monell claim against the City.

## VI. State Law Claims Against All Defendants

Defendants contend that all of plaintiff's state law claims should be dismissed because plaintiff failed to comply with New York's General Municipal Law. See N.Y. Gen. Mun. L. § 50-e et seq.; Def. Mem. at 25-26. Pursuant to sections 50-e and 50-i of that law, a plaintiff seeking to assert state tort law claims against a municipal entity or its employees acting in the scope of their employment must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the

date on which the cause of action accrues. See N.Y. Gen. Mun. L. §§ 50-e, 50-i. Further, a complaint asserting claims under New York law must specifically allege that thirty days have elapsed since the service of a notice of claim. See N.Y. Gen. Mun. L. § 50-i(1)(b). Compliance with this statute is strictly construed and failure to comply ordinarily results in dismissal. See, e.g., Davis v. Ventimiglia, No. 07 Civ. 6043 LAP/MHD, 2009 WL 4910047, at *5 (S.D.N.Y. Dec. 21, 2009); Bender v. Alvarez, No. 06-CV-3378 (CBA)(LB), 2009 WL 112716, at *10 (E.D.N.Y. Jan. 16, 2009).

Plaintiff concedes in her opposition papers that her claims for assault, battery, false arrest, and false imprisonment "are [] barred by the statute of limitations." Pl. Mem. at 27. However, plaintiff argues that she timely filed a notice of claim with respect to her malicious prosecution claim. See id.

A malicious prosecution claim accrues when a criminal proceeding is terminated in favor of the civil plaintiff. See Brogdon v. City of New Rochelle, 200 F.Supp.2d 411, 428 (S.D.N.Y. 2002). Here, it is undisputed that plaintiff's criminal proceeding was terminated in her favor on April 22, 2009. Plaintiff has submitted a copy of her notice of claim, reportedly filed on May 19, 2009 and received by the City in June 2009, which would be within section 50-e's ninety-day window.[12] See Notice of Claim, D.E. #46-13. The notice of claim asserts, among other things, that the City of New York and its representatives maliciously prosecuted plaintiff during the period from September 20, 2006 (the date of her arrest) until all criminal

_____

[12] While plaintiff asserts that her notice of claim was filed "*pro se*," see Pl. Mem. at 27, plaintiff's counsel mailed and notarized the notice of claim. See Notice of Claim, D.E. #46-13 at 1, 4.

-32-

charges against her were dismissed on April 22, 2009.  See id.

Faced with a copy of plaintiff's notice of claim, defendants abandon their contention
that she failed to file one, see Def. Mem. at 25-26, and argue instead that "plaintiff has failed
to meet the pleading requirements of N.Y. Gen. Mun. L. § 50-i, as plaintiff has failed to allege
in his [sic] complaint that he [sic] served a notice of claim, that thirty days have elapsed since
serving the notice of claim, and that adjustment or payment has been neglected or refused."
Def. Reply at 9.  While it is true that plaintiff failed to comply with the pleading requirements
of section 50-i, see generally Complaint, this technical pleading violation does not require
dismissal.  In all of the cases cited by defendants, the state law claims were dismissed for
failure to plead *and prove* that the requisite notice of claim had been timely filed.  See, e.g.,
Christian v. Town of Riga, 649 F.Supp.2d 84, 92 (W.D.N.Y. 2009) (no filing of notice of
claim); Reaves v. City of New York, 576 N.Y.S.2d 280, 280 (1st Dep't 1991) (same); see also
Abato v. New York City Off-Track Betting Corp., 03Civ.5849(LTS)(HPB), 2007 WL
1659197, at *10 (S.D.N.Y. June 7, 2007) (plaintiff failed to file a notice of claim asserting the
specific events at issue); Caruso v. Buffalo Urban Renewal Agency, 553 N.Y.S.2d 254, 254
(4th Dep't 1990) (filing of notice of claim is condition precedent to tort action against city
agency and must be alleged in complaint).  In contrast, where, as here, plaintiffs did comply
with the notice requirements but neglected to reference such compliance in their pleadings,
courts have allowed them to amend their complaints to cure the "technical error."  Razzano v.
County of Nassau, 599 F.Supp.2d 345, 354 (E.D.N.Y. 2009); see Doran v. Town of
Cheektowaga, 388 N.Y.S.2d 385, 388 (4th Dep't 1976) (failure to allege compliance with

notice requirement is "an omission [that] may be corrected or supplied in the discretion of the court if it appears that [the] other party will not be prejudiced thereby"); see also Christian, 649 F.Supp.2d at 92 n.7 ("[I]f plaintiff did comply with the notice requirements but failed to plead such compliance in his Amended Complaint, plaintiff is not precluded from filing an amended complaint setting forth that he complied with §§ 50-i and 50-e.").

Here, defendants do not assert that they would be unfairly prejudiced if plaintiff were permitted to amend her complaint to allege compliance with the notice requirements of section 50 with respect to her malicious prosecution claim. Therefore, plaintiff should be granted leave to amend for the limited purpose of curing the section 50-i defect. All state law claims other than that for malicious prosecution should be dismissed.[13]

## CONCLUSION

For the reasons stated above, there are genuine issues of material fact concerning the existence of probable cause to arrest plaintiff, and thus this Court recommends denying summary judgment as to plaintiff's section 1983 claims for false arrest and malicious prosecution against the individual officers, as well as on the defense of qualified immunity. The Court recommends granting summary judgment, dismissing plaintiff's section 1983 claim for excessive force, along with her section 1981 and 1985 claims, her Monell claim, and all

---

[13] In her complaint, plaintiff divides her negligence claim into eight different negligent allegations. See Compl. ¶ 75a-h. Plaintiff's submission opposing summary judgment consents to the dismissal of those subparts that assert negligent hiring and retention and negligent and intentional infliction of emotional distress. See Pl. Mem. at 1. However, her papers are silent as to the remaining negligence allegations. See id. at 26-27. Because plaintiff has failed to establish that she timely filed a notice of claim as to her claim of negligence, the Court recommends that any remaining negligence allegations also be dismissed.

state law claims other than that for malicious prosecution.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Kiyo A. Matsumoto on or before **February 3, 2012**.  Failure to file objections in a timely manner may waive a right to appeal the District Court order.

The Clerk is directed to enter this Report and Recommendation into the ECF system.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**January 17, 2012**

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**