UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X

DEBORAH TRAPP-MILEY,

                    Plaintiff,                    **ORDER ADOPTING IN PART
                                                  AND MODIFYING IN PART
                                                  REPORT AND
    -against-                                     RECOMMENDATION**

THE CITY OF NEW YORK, ET AL.,                     09-cv-3933 (KAM)(RLM)

                    Defendants.

--------------------------------------X

**MATSUMOTO, United States District Judge:**

        On September 11, 2009, plaintiff Deborah Trapp-Miley

("plaintiff") commenced the instant action against the City of

New York, Sergeant John Passamenti, and Police Officer Louis

Morselli (collectively, "defendants"), alleging violations of her

civil rights pursuant to 42 U.S.C. §§ 1981, 1983, and 1985, as

well as pendent state law claims, all of which arose in

connection with her September 20, 2006 arrest for disorderly

conduct and obstruction of governmental administration.  (*See*

*generally* ECF No. 1, Complaint ("Compl.").)  On June 21, 2011,

defendants moved for summary judgment pursuant to Federal Rule of

Civil Procedure 56.  (*See generally* ECF No. 43, Defendants'

Memorandum of Law in Support of their Motion for Summary Judgment

("Defs.' Mem.").)

        The Honorable Roanne Mann issued a Report and

Recommendation dated January 17, 2012 ("R&R"), recommending that

this court (1) deny summary judgment as to plaintiff's Section

1983 claims for false arrest and malicious prosecution against the individual officers; (2) deny summary judgment as to defendants' qualified immunity defense; (3) grant summary judgment as to plaintiff's Section 1983 claim for excessive force, Section 1981 and 1985 claims, *Monell* claim, and all state law claims except plaintiff's malicious prosecution claim; and (4) grant plaintiff leave to amend her state law malicious prosecution claim for the limited purpose of curing a pleading defect. (ECF No. 57, Report and Recommendation ("R&R"), at 34-35.)

Defendants timely objected to specific portions of the R&R, arguing that the R&R (1) "improperly concluded that plaintiff's undisputed conduct did not create probable cause to believe she had obstructed governmental administration"; and (2) "erred [in] holding that defendants are not entitled to qualified immunity despite the fact that the elements of obstruction of governmental administration are not clearly established in either the statute or recent law." (ECF No. 58, Defendants' Objections to the Magistrate's Report and Recommendation on Defendants' Motion for Summary Judgment ("Defs.' Obj.") at 1.) Plaintiff did not oppose or otherwise respond to defendants' objections.

Having undertaken a *de novo* review of the record in light of defendants' objections pursuant to 28 U.S.C.

§ 636(b)(1)(C), the court adopts in part and modifies in part the R&R for the reasons set forth below.

<u>**BACKGROUND**</u>

The court assumes familiarity with the detailed facts and procedural history of this case, as accurately and thoroughly set forth in Judge Mann's R&R. (*See* R&R at 2-8.) The relevant facts are repeated here only to the extent necessary for the court's analysis.[1]

On September 20, 2006, plaintiff's minor son, Merchant Trapp, was arrested and brought to the 83rd Precinct police station, purportedly for assaulting another minor, Shakeem Wright, during a fight involving two other individuals. (ECF No. 45, Defendants' Rule 56.1 Statement ("Defs.' 56.1") ¶¶ 1-2[2]; ECF No. 47, Plaintiff's Rule 56.1 Statement ("Pl.'s 56.1") ¶¶ 1-2.) Upon plaintiff's arrival at the 83rd Precinct station to find out what had happened to her son, plaintiff approached an information counter, which was in a restricted area that was separated from the public waiting area by a large Plexiglass wall that had an opening that enabled visitors to speak with the officer at the information counter. (Defs.' 56.1 ¶ 3; ECF No. 44-3, Excerpts of Plaintiff's Deposition ("Pl. Dep.") at 24, 26, 28-29.)

Seated in a non-public space behind the Plexiglass wall

---

[1] These facts are undisputed unless otherwise noted.
[2] References to the parties' 56.1 Statements incorporate all record citations therein.

and next to the information window was Mr. Wright, the purported victim in the fight with Merchant Trapp, plaintiff's son. (Defs.' 56.1 ¶ 3; Pl.'s 56.1 ¶¶ 2a, 3b.)  Although it is not clear who initiated the conversation, the parties agree that plaintiff and Mr. Wright eventually began to converse, and that plaintiff leaned over the counter and "peeked" her head through the open Plexiglass sliding window as she spoke with Mr. Wright, who informed plaintiff that he had been in a fight with her son. (Defs.' 56.1 ¶¶ 4-6; Pl.'s 56.1 ¶¶ 4-6.)  Police Officer Joseph Riso, who was also behind the Plexiglass wall, observed plaintiff's conversation with Mr. Wright and approached Mr. Wright to hear what plaintiff was saying to him.  (Defs.' 56.1 ¶ 10; Pl.'s 56.1 ¶ 10; ECF No. 46-2, Deposition of Joseph Riso ("Riso Dep.") at 30.)  When Officer Riso was within earshot, he heard plaintiff tell Mr. Wright, in sum and substance, "If you press charges against my son, I'm going to press charges against you."  (Defs.' 56.1 ¶¶ 7, 11; Pl.'s 56.1 ¶¶ 7a, 10-11.) Plaintiff admits making this statement.  (Pl.'s 56.1 ¶ 7a.)

        According to plaintiff, when Officer Riso approached Mr. Wright and asked if Mr. Wright was ready to make and sign a statement against Merchant Trapp, Mr. Wright informed Officer Riso that he did not wish to and never agreed to sign a complaint.  (Pl.'s 56.1 ¶ 11a; Pl. Dep. at 39; ECF No. 46-6, Wright Interrogation ("Wright Int.") at NYC 195.)  When plaintiff

4

saw Officer Riso take out his handcuffs and threaten to "lock [Mr. Wright] up" if Mr. Wright continued to refuse to press charges, she told Officer Riso, "You can't do that.  You can't coerce a witness."  (Pl.'s 56.1 ¶¶ 11b-11c; Pl. Dep. at 39-40; Wright Int. at NYC 195.)  In response, plaintiff claims, Officer Riso asked the front desk officer for plaintiff's identity, "slammed the [Plexiglass] window closed," and then Officer Riso walked away to speak with defendant Sergeant Passamenti.  (Pl.'s 56.1 ¶ 12; ECF No. 46-5, Transcript of Plaintiff's Administrative Trial Testimony ("Pl. Tr.") at NYC 137.)

        According to Sergeant Passamenti, Officer Riso told him that plaintiff had been tampering with the victim, Mr. Wright. (Defs.' 56.1 ¶¶ 12, 13; Pl.'s 56.1 ¶ 13-13b; ECF No. 44-5, Transcript of Passamenti's Administrative Trial Testimony ("Passamenti Tr.") at NYC 112.)  Officer Riso testified at his deposition, however, that when he spoke to Sergeant Passamenti about what he observed and heard of plaintiff's encounter with Mr. Wright, Officer Riso did not use the words "threat" or "tamper with."  (Pl.'s 56.1 ¶¶ 13-13b; Riso Dep. at 35.)  Officer Riso testified that he told Sergeant Passamenti "exactly" what plaintiff had said to Mr. Wright about pressing charges.  (Riso Dep. at 35.)

        Soon after, Sergeant Passamenti requested that plaintiff speak with him further within the precinct, whereupon

plaintiff explained to Sergeant Passamenti that she had spoken to Mr. Wright and that Mr. Wright did not want to press charges. (Defs.' 56.1 ¶ 14; Pl.'s 56.1 ¶ 14.)  Sergeant Passamenti then arrested plaintiff and charged her with disorderly conduct pursuant to New York Penal Law § 240.20(3)[3] and obstruction of governmental administration pursuant to New York Penal Law § 195.05.[4]  (Defs.' 56.1 ¶ 15; Pl.'s 56.1 ¶ 15.)

<u>**DISCUSSION**</u>

**I. Legal Standards**

**A. Review of a Report and Recommendation**

To the extent that a party makes specific and timely objections to a magistrate judge's findings or recommendations, the court must apply a *de novo* standard of review.  28 U.S.C. § 636(b)(1); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997).  Upon such review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," "receive further evidence or recommit

---

[3] Pursuant to N.Y. Penal Law § 240.20(3),
> A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, in a public place, he uses abusive or obscene language, or makes an obscene gesture . . . .

N.Y. Penal L. § 240.20(3).

[4] Pursuant to N.Y. Penal Law § 195.05,
> A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or . . . prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference . . . .

N.Y. Penal L. § 195.05.

the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).

The court reviews an R&R only for clear error, however, when a party makes "conclusory or general objections, or simply reiterates his original arguments." *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002) (citation and internal quotation marks omitted); *see Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [submissions].") (internal quotation marks omitted). Furthermore, where no objection to a Report and Recommendation has been filed, the court "need only satisfy itself that there is no clear error on the face of the record." *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).

**B. Summary Judgment**

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-34 (1986). Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

7

"A fact is material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks and citations omitted).

Thus, the court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When ruling on a summary judgment motion, the district court "must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 780 (2d Cir. 2003).

In a motion for summary judgment, the moving party carries the initial burden of demonstrating an absence of evidence to support the nonmoving party's case. *Celotex*, 477 U.S. at 325. The nonmoving party then "must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (internal quotation marks omitted). To defeat a summary judgment motion, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for

that party." *Anderson*, 477 U.S. at 249.

**II.    Application**

In light of defendants' objections, the court has conducted a *de novo* review of the record with respect to Judge Mann's recommendation that the court deny defendants' motion for summary judgment as to plaintiff's Section 1983 claims for false arrest and malicious prosecution, and on the defense of qualified immunity.

**A. Defendant's Objection Regarding False Arrest Claim**

A Section 1983 claim for false arrest sounding in the Fourth Amendment is "substantially the same" as a claim for false arrest under New York law. *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). Under New York law, the torts of false arrest and false imprisonment are "synonymous," *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991), and "the elements of a false imprisonment claim are: (1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (internal citation and quotation marks omitted).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false

arrest, whether that action is brought under [New York] law or under [Section] 1983." *Kilburn v. Vill. of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011) (quoting *Weyant*, 101 F.3d at 852) (internal citation and quotation marks omitted). Generally, probable cause to arrest exists "when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007).

In evaluating the existence of probable cause, the court must look to the "totality of the circumstances," *Caldarola*, 298 F.3d at 162, and consider the "facts available to the officer at the time of arrest." *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (internal citations omitted). Furthermore, the court's "assessment as to whether probable cause existed at the time of the arrest is to be made on the basis of the collective knowledge of the police, rather than on that of the arresting officer alone." *Husbands ex rel. Forde v. City of New York*, 335 F. App'x 124, 127 (2d Cir. 2009); *see Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (noting that in making a probable cause determination, police officers are "entitled to rely on the allegations of fellow police officers").

In this case, the parties do not dispute the underlying material facts; rather, they disagree as to whether, given the undisputed facts, Sergeant Passamenti had probable cause to arrest plaintiff.  Defendants assert that Sergeant Passamenti had probable cause to arrest plaintiff because plaintiff's "insistence that [Mr. Wright] drop the charges or face countercharges from her and her son[] constituted intentional interference with the police's efforts to obtain further information about the suspected assault" and "plaintiff's statements to Mr. Wright were aimed at preventing him, by means of intimidation, from cooperating with the police." (Defs.' Mem. at 7.)  Defendants also contend that Mr. Wright's subsequent unwillingness to press charges against Mr. Trapp after plaintiff spoke with Mr. Wright further bolstered the reasonableness of their belief that plaintiff had tampered with a witness.  (*Id.* at 8.)

Plaintiff, on the other hand, in her opposition to the defendants' summary judgment motion argues that "[f]rom all of the facts leading up to plaintiff's arrest, from what the defendants knew about the situation, and what was told to them by all parties involved, there was no probable cause to arrest Plaintiff." (ECF No. 52, Plaintiff's Memorandum of Law in Opposition ("Pl.'s Mem.") at 11.)  Notably, although plaintiff asserts that "there is a triable issue as to probable cause,

which precludes summary judgment," she does not identify any disputed material facts for a jury to decide. (*Id.*)

Where, as here, "there is no dispute as to the pertinent events and the knowledge of the officers," the court may determine as a matter of law whether or not probable cause existed. *Weyant*, 101 F.3d at 852 (internal citations omitted); *see Kilburn*, 413 F. App'x at 363 ("The parties do not dispute the material facts; the existence of probable cause therefore is properly decided as a matter of law."); *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007) (recognizing that "where there is no dispute as to what facts were relied on to demonstrate probable cause, the existence of probable cause is a question of law for the court").

Under New York Penal Law § 195.05, a person is guilty of obstruction of governmental administration "when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act . . . ."

For purposes of New York Penal Law § 195.05, "[p]hysical force or physical interference" includes "inappropriate and disruptive conduct at the scene of the performance of an official function." *Husbands ex rel. Forde v.*

12

*City of New York*, No. 05 Civ. 9252, 2007 WL 2454106, at *13
(S.D.N.Y. Aug. 16, 2007) (quoting *People v. Dolan*, 576 N.Y.S. 2d
901, 905 (N.Y. App. Div. 3rd Dep't 1991)), *aff'd*, 335 F. App'x
124 (2d Cir. 2009).  Judge Mann's R&R contains a careful and
thorough analysis of judicial precedents holding that one's
actions must be sufficiently physical in nature in order to
constitute obstruction of governmental administration for
purposes of New York Penal Law § 195.05.  (*See* R&R at 11-13.)

          Viewing the undisputed material facts in the light most
favorable to the non-moving plaintiff, the court concludes that
under the totality of the circumstances, plaintiff's conduct was
inappropriate and disruptive, and thus sufficiently physical in
nature to give defendants probable cause to arrest plaintiff for
obstruction of governmental administration.  First, at the time
of plaintiff's arrest, Mr. Wright--whom police believed was the
victim of an assault allegedly perpetrated by plaintiff's son--
was in a non-public area of the police station behind a
Plexiglass wall to provide information regarding the alleged
assault.  Plaintiff "peeked" or leaned her head through a window
in the Plexiglass wall, into the non-public area where Mr. Wright
was sitting for questioning, to warn Mr. Wright that if he
pressed charges against plaintiff's son, her son would press
counter-charges against Mr. Wright.  After observing and
overhearing plaintiff tell Mr. Wright that she would press

13

charges against him if he pressed charges against her son, and then receiving confirmation from Mr. Wright that he did not wish to press charges against Mr. Trapp, Officer Riso alerted Sergeant Passamenti about plaintiff's conversation with Mr. Wright.

Although the parties dispute whether Officer Riso used the words "threaten" or "tamper" when he told Sergeant Passamenti "exactly" what he heard plaintiff state to Mr. Wright (*see* Passamenti Tr. at NYC 112; Riso Dep. at 35), the court finds that the dispute is immaterial.  Accepting plaintiff's version of the discussion between Officer Riso and Sergeant Passamenti, in which Officer Riso described his observation and repeated verbatim what plaintiff said to Mr. Wright, the court finds that Officer Riso gave Sergeant Passamenti reasonably trustworthy and sufficient information to believe that plaintiff unlawfully interjected herself by leaning into a non-public area of the police station, and unlawfully and inappropriately interfered with and obstructed an ongoing police investigation.  These facts, coupled with plaintiff's own statement to Sergeant Passamenti that Mr. Wright did not wish to press charges, support a finding of probable cause to believe that plaintiff had obstructed, or attempted to obstruct, the police investigation into the altercation between Mr. Wright and plaintiff's son, in violation of New York Penal Law § 195.05.

Although the court recognizes that plaintiff was

ultimately charged with disorderly conduct in addition to obstruction of governmental administration, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and . . . it is not relevant whether probable cause existed with respect to each individual charge." *Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006); *Fredericks v. City of New York*, No. 07 Civ. 3659, 2008 WL 506326, at *4 (S.D.N.Y. Feb. 25, 2008) (emphasis added) ("[P]robable cause as to *any charge* at the time of arrest is sufficient to defeat a false arrest claim as a matter of law."). Accordingly, because the court finds on the undisputed material facts in the record that as a matter of law, there was probable cause to arrest plaintiff for obstruction of governmental administration, the court grants defendants' motion for summary judgment on plaintiff's Section 1983 false arrest claim.

### B. Malicious Prosecution Claims

Defendants also object to Judge Mann's recommendation that this court deny summary judgment as to plaintiff's federal and state malicious prosecution claims, arguing that these claims must fail because defendants had probable cause to arrest plaintiff for obstruction of governmental administration. Defendants overstate their case, however; while the existence of probable cause to arrest for obstruction of governmental administration disposes of plaintiff's claims for malicious

15

prosecution *with respect to obstruction of governmental administration*, it does not dispose of her claims for malicious prosecution with respect to *disorderly conduct*.

The court must separately review the merits of plaintiff's malicious prosecution claim with respect to the disorderly conduct charge because the court must "*separately analyze* the charges claimed to have been maliciously prosecuted." *Posr*, 944 F.2d at 100 (emphasis added); *see also Jovanovic v. City of New York*, No. 04 Civ. 8437, 2010 WL 8500283, at *6 (S.D.N.Y. Sept. 28, 2010) ("[W]here a plaintiff that brings a malicious prosecution claim was charged with multiple offenses, a court must analyze each claim separately for the purposes of determining whether the proceeding terminated favorably for the plaintiff.")

### 1.    Legal Standard

A malicious prosecution action implicates the constitutional right "to be free of unreasonable seizure of the person." *Singer*, 63 F.3d at 116.  The elements of a malicious prosecution claim brought under Section 1983 are substantially identical to those of a malicious prosecution claim brought under New York law.  *See Manganiello v. City of New York*, 612 F.3d 149, 160-61 (2d Cir. 2010) (in order to prevail on a Section 1983 for malicious prosecution, plaintiff must establish the elements of a malicious prosecution claim under state law).

16

Under New York law, "[t]o prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor." *Ricciuti*, 124 F.3d at 130. In addition, "[t]o sustain a § 1983 claim of malicious prosecution, a plaintiff must demonstrate conduct by the defendant . . . that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003).

### 2. Application to Obstruction-of-Governmental-Administration Charge

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Consequently, because the court agrees that defendants had probable cause to arrest plaintiff for obstruction of governmental administration as discussed *supra*, the court finds that defendants are entitled to summary judgment on plaintiff's federal and state malicious prosecution claims with respect to obstruction of governmental administration.

### 3. Application to Disorderly Conduct Charge

As for plaintiff's claim for malicious prosecution with respect to the disorderly conduct charge, upon *de novo* review and for the reasons stated in Judge Mann's R&R, the court finds that

plaintiff has established that there are disputed issues of material fact as to the first element, whether defendants initiated a criminal proceeding against plaintiff. (*See* R&R at 22-24)

The court also finds that there are disputed issues of material fact regarding the second element--that is, whether defendants had probable cause to arrest and prosecute plaintiff for disorderly conduct. Plaintiff was charged with a violation of New York Penal Law § 240.20(3), which proscribes the use of "abusive or obscene language, or . . . an obscene gesture" with "intent to cause public inconvenience, annoyance or alarm . . . in a public place." N.Y. Penal L. § 240.20(3).

Plaintiff denies raising her voice or yelling at any time prior to her arrest. During an administrative trial, she testified as follows:

> Q:  While at the station house either on the outside by the waiting area or inside by the front desk, did you ever curse at anybody?
> A:  No.
> Q:  Did you ever yell at anybody?
> A:  No.
> Q:  Did Sergeant Passamenti ever tell you that you need to calm down?
> A:  No.
> Q:  Did Officer Riso ever tell you that you need to calm down?
> A:  No.
> Q:  Did anyone ever tell you that you were creating a disturbance in the station house?
> A:  No, sir.
> Q:  Did anyone ever tell you that you were

> creating unnecessary noise in the station
> house?
> A:   No, sir.

(Pl. Tr. at NYC 139.)

Mr. Wright, on the other hand, testified that although plaintiff was "talking to me [Mr. Wright] nice," plaintiff "was getting loud with the other officer." (ECF No. 44-8, Transcript of Shakeem Wright's Administrative Trial Testimony ("Wright Tr.") at 13.) In addition, the record reflects that Sergeant Passamenti testified at an administrative proceeding that:

> She [plaintiff] was irate.  She was yelling
> and I tried to calm her down and I tried to
> explain to her what we had her son here for
> and what the circumstances were with his
> arrest.  She really was belligerent.  She was
> screaming and cursing.  Telling me she spoke
> to the victim, the 17-year-old victim, through
> the Plexiglas window and she now states[,
> "O]h, he doesn't want to press charges
> anymore. I spoke him [sic] to him about it["]
> and I said okay.  She was screaming and
> cursing and at that time I placed her under
> arrest for disorderly conduct and obstructing
> governmental administration.

(ECF No. 46-5, Transcript of Sergeant Passamenti's Administrative Trial Testimony, at NYC 118-19.) Given these vastly divergent accounts, two of which support a finding of probable cause and one of which does not, the court finds that an issue of material fact exists as to the second element, whether defendants had probable cause to arrest plaintiff for disorderly conduct.

As for the third element, as Judge Mann noted, "the malice may be inferred when an arrest is made without probable

cause." (*See* R&R at 25).  Accordingly, because there are
disputed issues of material fact regarding the existence of
probable cause to arrest plaintiff for disorderly conduct, an
issue of material fact remains as to the existence of malice.

Finally, upon *de novo* review, the court agrees with
Judge Mann's findings that plaintiff has established that the
criminal proceeding terminated in plaintiff's favor and that
plaintiff suffered a post-arraignment deprivation of liberty, and
thus has satisfied the fourth and fifth elements of a malicious
prosecution claim.  (*See id*. at 25-26.)  Accordingly, because
there are issues of material fact that a jury must resolve
regarding the second and third elements of plaintiff's federal
and state malicious prosecution claims with respect to disorderly
conduct, the court denies summary judgment as to these particular
claims.

### C. Qualified Immunity

Under the doctrine of qualified immunity, "[e]ven if
probable cause to arrest is ultimately found not to have existed,
an arresting officer will still be entitled to qualified immunity
from a suit for damages if he can establish that there was
'arguable probable cause' to arrest." *Escalera v. Lunn*, 361 F.3d
737, 743 (2d Cir. 2004).  "Arguable probable cause exists 'if
either (a) it was objectively reasonable for the officer to
believe that probable cause existed, or (b) officers of

reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (quoting *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991)).

Defendants objected to the R&R's recommendation that this court deny summary judgment on their qualified immunity defense on grounds that "defendants had a reasonable belief that plaintiff's conduct was unlawful and since the physical act requirement of § 195.05 is not clearly established." (Defs.' Obj. at 6-8.)  The court is not persuaded by defendants' objections.

As an initial matter, defendants' arguments are inapposite because the only remaining claim to which qualified immunity may apply is plaintiff's Section 1983 claim for malicious prosecution with respect to disorderly conduct. Furthermore, as discussed *supra*, there are disputed issues of material fact regarding the nature of plaintiff's behavior immediately preceding her arrest.  If the jury accepts plaintiff's version of events, defendants had no probable cause-- arguable or otherwise--to arrest plaintiff for disorderly conduct.  If the jury were to accept defendants' version of events, however, plaintiff's arrest for disorderly conduct was unquestionably supported by probable cause.  In light of these disputed issues of fact, the court denies summary judgment regarding qualified immunity.

21

### D. Report and Recommendation

The court notes that there are no objections to Judge Mann's recommendations that this court grant summary judgment as to plaintiff's Section 1983 claim for excessive force, Section 1981 and 1985 claims, *Monell* claim, and all state law claims except her malicious prosecution claim.  Nor has any party objected to Judge Mann's recommendation that this court grant leave to amend her complaint for the limited purpose of curing a pleading defect regarding her timely filing of a notice of claim with respect to her malicious prosecution claim.  Having reviewed the record and finding no clear error with Judge Mann's thorough and well-reasoned recommendations, for the reasons set forth in the R&R, the court affirms and adopts as the opinion of the court the recommendations to grant summary judgment on plaintiff's excessive force claim under Section 1983, plaintiff's Section 1981 and 1985 claims, plaintiff's *Monell* claim, and all state law claims except malicious prosecution.

<u>CONCLUSION</u>

For the reasons set forth above, the court modifies in part and adopts in part Judge Mann's Report and Recommendation. Accordingly, the court (1) denies defendants' motion for summary judgment on plaintiff's federal and state claims for malicious prosecution with respect to disorderly conduct; (2) grants defendants' motion for summary judgment on all of plaintiff's

remaining claims; (3) denies defendants' motion for summary judgment on their qualified immunity defense; and (4) grants plaintiff leave to amend her complaint for the limited purpose of curing a pleading defect regarding her malicious prosecution claim pursuant to New York General Municipal Law § 50-i.  The parties shall jointly advise this court by ECF no later than April 6, 2012, as to how they intend to proceed.


SO ORDERED.


Dated:    March 29, 2012
          Brooklyn, New York

                              _____ __/s/_____
                              Kiyo A. Matsumoto
                              United States District Judge

23